### IN THE

# SUPREME COURT OF NEBRASKA.

## JULY TERM, 1873.

### PRESENT:

HON. GEORGE B. LAKE, CHIEF JUSTICE.
" DANIEL GANTT, } ASSOCIATE JUSTICES.
" SAMUEL MAXWELL, }

---

THOMAS TALLON, PLAINTIFF IN ERROR, v. JOHN B. ELLISON AND SONS, DEFENDANTS IN ERROR.

**Attachment: AFFIDAVIT.** The ground for an attachment may be stated in the affidavit in the language of the statute, without specifying more particularly the facts intended to be alleged.

———: BURDEN OF PROOF. The charge thus made if denied by the defendant, must be sustained by the plaintiff to the satisfaction of the court; upon the plaintiff, by the denial, is thrown the burden of proof.

———: ———. *Ellison v. Tallon*, 2 *Neb.*, 14, cited and approved.

**Chattel Mortgage.** A mortgage of a stock of goods, where the mortgagor continues in possession thereof, and disposes of the same in the usual and ordinary course of trade, is void as against the creditors of the mortgagor and subsequent purchasers in good faith.

THIS was a petition in error to reverse a judgment of the district court of Douglas county. The facts are substantially as follows:

On the eleventh day of November, 1868, R. B. Price and Thomas Tallon, the plaintiff in error, being engaged in business as merchant tailors at Omaha, Nebraska, executed a mortgage on their stock of goods to Jones and Stutsman, of Leavenworth, Kansas, to secure the payment of $5000. The mortgagors remained in possession and continued to sell the goods mortgaged. Price and Tallon afterwards dissolved partnership, and the latter continued the business in his own name. On the 16th day of November, 1869, Tallon executed a mortgage to Ryland Jones to secure the sum of $4500, and this mortgage appears to have been intended to take the place of the one executed by Price and Tallon to Jones and Stutsman. On the same day Tallon gave another mortgage on his stock of goods to White, Heath & Co., of New York, to secure the payment of $653.58. All of these mortgages were duly recorded in the office of the county clerk. Tallon remained in possession and continued to sell the goods, and treated them in all respects as his own. On the 22d of September, 1869, the defendants in error sold Tallon a bill of goods to be paid for in thirty, sixty, and ninety days. Upon this bill of goods payments were made at various times, reducing the debt to defendants in error, to $901. On the fourth of April, 1870, an action was brought against Tallon to recover the amount of this debt, and judgment was duly rendered thereon against him. That cause came before this court to obtain a reversal of the order made by the court below in dissolving the attachment issued therein, and is reported in 2 *Nebraska, page* 14. On the eighth day of December, A. D. 1869, the defendants in error sold Tallon another bill of goods amounting to $801.42, and the same not being paid for when due, the defendants in error brought suit against Tallon, and caused an order of attachment to issue against his property, under which the sheriff levied upon the property covered by the mort-

gages to Jones and White, Heath & Co. The plaintiff in error moved to dissolve this attachment, which motion was overruled by the court, and judgment thereupon rendered against Tallon. To reverse this judgment the cause was brought here by petition in error.

*George W. Doane*, for plaintiff in error.

There are three grounds of error assigned in this petition, namely:

I. In overruling the motion to set aside the service and to dismiss for want of service.

II. In overruling the motion to discharge the attachment.

III. That the facts set forth in the petition in the court below are not sufficient in law to constitute a cause of action.

The plaintiff in error relies principally upon the ground contained in the second allegation, namely: "That the court erred in overruling the motion to discharge the attachment levied in said action, upon the affidavits filed therein."

As said ruling was based entirely upon the fact that certain chattel mortgages had been given by the plaintiff in error upon his stock of goods, with which he continued to trade in the ordinary course of business, which was held to be a fraud *per se*, (the plaintiff in error being expressly relieved from any suspicion of intentional fraud, or fraud in fact,) I will confine my citation of authorities solely to that point.

The attorney for defendants in error has cited numerous decisions (mainly in New York and Ohio, however) to sustain his position, but it will be observed that in each of the cases cited in which this doctrine of fraud *per se*

was announced, there was shown by the proofs to have been either,

1st.   An express reservation of the power of sale to the mortgagor in the mortgage itself, or

2d.   An express agreement outside of the mortgage that the mortgagor might sell or dispose of the property mortgaged, or

3d.   The sale of the mortgaged property by the mortgagor with the knowledge and consent of the mortgagee, whereby such an agreement must be necessarily inferred.

Neither of these conditions is shown by the proofs to exist in this case.   On the contrary the very fact which appears, that one of the mortgagees, Jones, resided at Leavenworth, Kansas, and that the others, White, Heath & Co., resided in New York City, while the business of Tallon was carried on in Omaha City, repels the inference of such knowledge and consent.   The existence of facts from which fraud is to be inferred should never be assumed, but the facts should be themselves clearly established, and the inference therefrom irresistible.   The defendants in error ask this court to assume that the mortgagees knew of the manner of dealing with the mortgaged property by Tallon, and that they consented thereto, and from these *assumed facts* to infer an agreement that he might so· deal with them, from which agreement they ask that the mortgages be declared fraudulent as to creditors, and that Tallon gave them " *with intent* to defraud creditors." The whole theory of the New York and Ohio decisions is based upon the existence of a collusive and fraudulent agreement between the mortgagor and mortgagee, which agreement either appears in the mortgage itself, or is established incontrovertibly by facts *aliunde*.   Then according to those decisions, the law infers fraud.   But there is not a single instance in which such an inference has been drawn in the absence of proof of collusion or

agreement between the mortgagor and mortgagee. The very reason and basis of the decisions, is the collusive agreement between the parties to withdraw the property of the debtor from the reach of his creditors. Without this there could be no implication of fraud. How, then, can it be inferred, in the absence of any proof of such an agreement, or of any facts from which such agreement must necessarily be implied, that a chattel mortgage in the usual form, containing the ordinary conditions, was given "with intent to defraud creditors?" The proof shows that the original mortgage to Jones and Stutsman was given with the full knowledge of all the creditors at the time, of the mortgagors. Those who became creditors subsequently have no reason to complain of the giving of the mortgage, for they are placed in no worse condition than they were in, at the time they extended the credit to the mortgagor.

The first mortgage from Tallon to Jones & Stutsman was given and recorded Nov. 11, 1868, and the renewal mortgage to Jones alone was given and recorded Nov. 16, 1869, as also the mortgage to White, Heath & Co. The debt upon which this suit was brought was contracted Dec. 8, 1869.

The whole question as to the good faith of the plaintiff in error in his dealings with the defendants in error, as well as the effect of the chattel mortgages upon the question of good faith in his dealings with his creditors, came under review in this court in the case of *Ellison v. Tallon* at a previous term, upon precisely the same state of facts as shown by the record, as is exhibited in this case, and it was there expressly found, that "the preponderance of proof is clearly with the defendant, and against the truth of the charge made for obtaining the attachment." *2nd Nebraska, page* 14. These questions have therefore become *res adjudicata* as between these parties, and I submit that when an adjudication has once been

had in a court of last resort, upon questions of fact, involving nothing more than the pecuniary interests of the parties themselves, such decision should stand, unless it appears very clearly that an injustice has been done.

The facts in this case all·show conclusively that no injustice was done by that decision, but that the only injustice in the case was in the original attachment proceedings, whereby the business of an honest man was broken up and his credit ruined.

It is claimed, however, that a rule of law was violated by the previous decision and it is now attempted to have engrafted upon our laws the rule adopted in Ohio and New York, that the reservation of a power of sale to the mortgagor in a chattel mortgage, or an agreement to that effect outside of the mortgage, is a fraud *per se*, and utterly inconsistent with the idea of good faith. I humbly submit, that in those cases in which this rule has been adopted as an inflexible *rule of law* to be applied in all cases without reference to other facts and circumstances connected with the transaction, it has been carried beyond reason, and the weight of authority.

I shall content myself with a citation of some of the authorities in which the opposite doctrine has been emphatically announced, namely, that such a reservation or agreement is at most but a fact or circumstance to be considered in connection with other facts and circumstances, in determining the character of the transaction. *Spencer v. Deagle*, 34 *Missouri*, 455. *Briggs v. Parkman*, 2 *Met.* 258. *Jones v. Huggeford*, 3 *Met.* 515. *Barker v. Hall*, 13 *N. H.* 298. *Thornton v. Davenport*, 1 *Scam.* 296. *Torbert v. Hayden*, 11 *Iowa*, 435. *Wilhelmi v. Leonard*, 13 *Iowa*, 330. *Adler, et al., v. Claflin, et al.*, 17 *Iowa*, 89. *Hickman v. Perrin, et al.*, 6 *Coldwell*, (*Tenn.*) 135. *Gay v. Bidwell*, 7 *Mich.*, 519.

Under these decisions, the fact of the sale of the mortgaged goods in the ordinary course of business by the

plaintiff in error, even if it were shown to have been with the knowledge and consent of the mortgagees, would be only a fact to be taken in connection with other facts in determining the character of the transaction. But I insist that the proofs do not bring this case within the rule stated in the cases cited by attorney for defendants in error, in that they fail to show any agreement or assent on the part of the mortgagees, to the disposition of the goods by the mortgagor, and while their security might be lessened by such disposition, that could give no cause of complaint to other creditors, and especially to those who become such after the mortgages had been given and entered of record.

*T. W. T. Richards*, for defendants in error.

As to the assignment of error in sustaining the attachment, defendants in error say that the grounds upon which the attachment was granted are:

I. That the plaintiff in error (Tallon) fraudulently contracted the debt for which suit was brought. This is entirely a question of fact, and is fully established by the affidavits in attachment.

II. That the plaintiff in error (Tallon) had disposed of a part of his property with the intent to defraud his creditors. As to this ground of attachment the defendants in error say:

1. That the affidavits show that Tallon gave chattel mortgages upon his entire stock of goods, upon which he was doing the business of a merchant tailor, but that he retained possession of such stock long after the maturity of the mortgages, and treated it and disposed of it as his own, in the regular course of his business, and with the full knowledge and consent of the mortgagees. This the law demonstrates a *legal fraud*, a disposition of one's

property in fraud of the rights of creditors. The Court of Appeals of the state of New York has repeatedly decided this question under statutes precisely the same as our own and from which the statutes of Ohio were copied. *Griswold v. Sheldon*, 4 *N. Y.* 581, 587–594. *Edgell v. Hart*, 9 *N. Y.*, 213, 216–219. *Ford, et al., v. Williams*, 13 *N. Y.*, 577, 583–584. *Gardner v. McEwen*, 19 *N. Y.*, 123, 125, 126. *Russell v. Winne*, 37 *N. Y.*, 591, 593–599. *Wood v. Lowry*, 17 *Wend.*, 123, 125. *White v. Cole*, 24 *Wend.*, 116.

2. The Supreme Court of Ohio has also decided the same question in the same way, under the same statutes, from which our own statutes were copied after the rendition of said decisions. *Collins v. Myers, et al.*, 16 *Ohio*, 547, 552, 556. *Freeman v. Rawson*, 5 *Ohio State*, 1, 6, 12. *Harman v. Abbey*, 7 *Ohio State*, 218, 220.

3. The Supreme Courts of Illinois, Indiana, Wisconsin, Pennsylvania, New Hampshire, and Massachusetts have all held that such mortgages are fraudulent *per se* and void. *Hanford v. Obrecht*, 49 *Ill.*, 146. *Jordan v. Turner*, 3 *Blackf.* (*Ind.*) 314. *New Albany Ins. Co. v. Wilcoxson*, 21 *Ind.*, 355. *Place v. Langworthy*, 13 *Wis.*, 629 *Young v. M'Clure*, 2 *Watts and S.* (*Pa.*,) 147. *Welsh v. Bekey*, 1 *Penn.*, 57. *Milne v. Henry*, 40 *Penn. State*, 352. *Robbins v. Parker*, 3 *Met.*, 117.

III. But it is contended by the plaintiff in error that the Nebraska Statutes make such transfers only *prima facie* fraudulent when the mortgage is duly recorded, and that the consideration and good faith of the mortgages in question, are established by the affidavits of the plaintiff in error. In answer to this the defendants in error say:

*First.* That there is nothing in their affidavits which in any way "make it appear" that these mortgages were made in good faith and without intent to defraud creditors. By the statutes, the *onus probandi* is upon the

plaintiff in error. No facts are stated. The considera-
tion is not disclosed or sworn to, nor in fact anything
except the mere conclusion of law that they were made
in good faith and without intent, etc.

*Second.* That the statutes only cover cases where the
property mortgaged is left with the mortgagor, to be *used*
by him until default, and not to cases, where, by agree-
ment of the mortgagor and mortgagee, the former is to
retain, not only the possession and the use of the prop-
erty, *but the right to barter and sell the same, and treat
it as his own.* This distinction is strongly and distinctly
made in the cases above cited—especially in the cases of
*Edgell v. Hart,* and *Russell v. Winne.*

IV. But the plaintiff in error will doubtless claim
that the mortgages were of record when the indebtedness
to the defendants was contracted, and hence notice to all
the world, and the defendants consequently cannot claim
to be injured by it. In answer to this the defendants say:

*First.* That the Statutes of Nebraska, page 394, Sec.
12, define the term "*creditors*" to mean "all persons
who shall be creditors of the vendor or assignor *at any
time while such goods and chattels shall remain in his
possession or under his control.*"

*Second.* That the object of recording a mortgage is
to give notice to subsequent purchasers, and it is notice
to them, but there is no law making it notice to a person
selling goods to the mortgagor on open account. He can
not be charged with notice unless *actual notice* is brought
home to him, which has not been done in this case.

*Third.* If the mortgage is a fraud upon creditors
*actual notice* of the lien is not sufficient to conclude a
creditor from attacking the mortgage. *White v. Cole,*
24 *Wend.,* 123, 124. Much less will *constructive notice,*
by registration, effect this right.

V. Plaintiff in error also contends that the Nebraska

Statutes, make the question of fraudulent intent always a question of fact. *General Statutes*, 395, *Sec.* 20. But the statutes do not cover the case *where a stock of goods or property consumable in the use* is mortgaged and mortgagor retaining the possession and treating it as his own. *Edgell v. Hart, Russell v. Winne, and other cases cited above.*

VI.   The only way in which the plaintiff in error seeks to get over this fraudulent transfer by mortgage, is by swearing to good faith and good intentions.   In the case of *Coston v. Paige*, 9 *Ohio State* 397, Judge Gholson says in a case analagous to this one, " *There is this clear advantage on the part of the plaintiff, that distinct and positive allegations are charged which are not met by the defendant; while the statements in the defendant's affidavit are to a great extent not matters of fact, but of belief in the good conduct and intentions of the defendant.*"

VII.   It is also contended that the supporting affidavits of defendants in error are only cumulative and are not responsive to the affidavits of plaintiff in error.   If true, this should have been taken advantage of below, by motion to suppress, and if overruled exception taken.   The record does not show any such motion.   The plaintiff in error cannot now raise any such objection.

In conclusion, defendants in error say that the first ground of attachment being purely a question of fact and the court below having sustained the attachment, the supreme court should not reverse, unless it *clearly* appears that the finding was contrary to the evidence.   That upon the second ground the authorities are overwhelmingly in favor of the attachment, while public policy requires that all such transactions as the mortgages in question should be discountenanced.

MAXWELL, J.

The only alleged error insisted upon in the argument of this cause, was as to ruling of the court below upon the motion to dissolve the attachment issued therein.

The agent of the defendants in error swears in his affidavit that at the time the credit was given, Tallon, although really insolvent, assured him that his entire indebtedness did not exceed the sum of fifteen hundred dollars, and that his stock on hand and debts due largely exceeded his total indebtedness, and it is alleged that the credit was given solely on the strength of these representations. Tallon admits that he stated to the agent of the defendants in error, that his indebtedness to other houses did not exceed the sum of fifteen hundred dollars, and that no inquiry was made about mortgages, and for that reason he said nothing to the agent about his goods being mortgaged. The agent for the defendants in error also says, that it was not until about the 27th day of March, 1870, that defendants in error were informed of the existence of the mortgages on the stock of goods, that at that time the entire stock of Tallon would not pay more than seventy per cent. of his liabilities, and that Price was insolvent.

The grounds set forth in the affidavit for an attachment in the court below were:

" *First.* That the defendant had fraudulently contracted the debt.

*Second.* That he had fraudulently disposed of his property, or a part thereof with the intent to defraud his creditors."

These are two of the grounds mentioned in the statute for an attachment. *General Statutes,* 556. An affidavit for an attachment is sufficient if it be in the words of the statute. *Ellison v. Tallon,* 2 *Neb.,* 14. *Coston v. Paige,* 9 *Ohio State,* 397.

The charge thus made if denied by the defendant, must be sustained by the plaintiff to the satisfaction of the court; upon the plaintiff, by the denial, is thrown the burden of proof. *Id.*

It is clearly shown in this case that the plaintiff in error at the time he made his first purchase of goods, Sept. 22, 1869, in answer to the inquiry of the agent of the defendants in error, as to the amount of his indebtedness to other houses, stated that his indebtedness was about the sum of fifteen hundred dollars, evidently intending to convey the impression that that was the entire amount of his indebtedness, although there were mortgages on his stock at that time exceeding the sum of five thousand dollars. The principle is well established, that if a party for the purpose of obtaining credit, make false representations as to his solvency or of the condition of his financial affairs, whereby the other party relying on these statements is induced to sell his goods or part with his property, it is manifestly a fraud on such party. And the misrepresentation may be either by words, or acts, or the suppression of material facts, with intent to deceive. The important inquiry, therefore, in all this class of cases is, whether one party has been wilfully deceived or misled by the other to his injury; for if this be once shown, redress will be afforded without regard to the means by which the deception was affected. *Story's Eq.* § 192. *Hanson v. Edgerly*, 9 *Foster*, 345. *Denny v. Gilman*, 26 *Maine*, 149. *Allen v. Addington*, 7 *Wend.*, 10. *Kidney v. Stoddard*, 7 *Met.*, 252.

A further question arises as to the effect of the mortgages to Jones and Stutsman, Ryland Jones, and White, Heath and Co., on the goods of the plaintiff in error.

A mortgage of chattels is a sale with a condition. The legal title passes to the mortgagee, subject to the mortgagor's right to perform the condition and after default the legal title is said to become absolute in the mortgagee.

Our statute provides that " every sale made by a vendor of goods and chattels, in his possession or under his control, and every assignment of goods and chattels by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith; and shall be conclusive evidence of fraud, unless it shall be made to appear on the part of the persons claiming under such sale or assignment, that the same was made in good faith, and without any intent to defraud such creditors or purchasers." *General Statutes*, 393, *sec.* 11.

Many respectable authorities were produced on the argument of this case, to show that a mortgage of goods and chattels, with possession and power of sale in the mortgagor, is a valid mortgage against the creditors of the mortgagor. With due respect to the ability displayed in a number of the opinions thus cited, we cannot regard them as the law upon that subject. " The very nature of a mortgage is to fasten a lien upon specific property, and the courts have gone far enough when they have permitted an honest possession in the mortgagor; because that opens up a door by which an honest vendee, may be defrauded by purchase without notice, but in this case there is no specific lien, but a floating mortgage which attaches, swells, and contracts as the stock in trade changes, increases, or diminishes, or may wholly expire by entire sale and disposition, at the will of the mortgagor. Such a mortgage is no certain security upon specific property; it all depends upon the honesty and good faith of the debtor, and as he might dispose of it to a creditor at will, to satisfy a debt, we see no reason why a

creditor may not seize it against his will, for the same purpose. In such a case the whole right to dispose of the property to pay a debt depends on the will of the debtor." *Collins and McElroy v. Myers,* 16 *Ohio,* 554. *Freeman v. Ransom,* 5 *Ohio State,* 1. *Harman v. Allen,* 7 *Id.,* 218. *Edgell v. Hart,* 9 *New York,* 217. *Divver v. McLaughlin,* 2 *Wend.,* 596. *Griswold v. Sheldon,* 4 *New York,* 588.

Such a mortgage is void as against creditors and subsequent purchasers in good faith. The judgment of the district court is clearly right and must be affirmed.

JUDGMENT AFFIRMED.

MR. JUSTICE GANTT, concurs.