CASE 30.—ACTION BY SAMUEL FRANCIS AGAINST H. C. LILLY'S EXECUTRIX AND OTHERS SETTING UP A CLAIM TO CERTAIN LAND AND TO VACATE A JUDGMENT UNDER WHICH LILLY CLAIMED TO HAVE PURCHASED THE LAND.—January 11.

# Francis v. Lilly's Executrix

Appeal from Letcher Circuit Court.

M. J. Moss, Circuit Judge.

Judgment for plaintiff, and from an order granting a motion to vacate the judgment and award a new trial the plaintiff appeals.   Affirmed.

1.   New Trials—Final Order—Appeals—A judgment awarding a new trial, granted after the term at which the original judgment was rendered, is a final order from which an appeal lies.

2.   Courts—Jurisdiction—Conferred by Law—Recital in Judg-

ment.—A court cannot make jurisdiction for itself, it must be conferred by law. The mere recital by the court in its judgment that it has got the party before it cannot make the fact so if it is not so, and such false recital cannot create a jurisdiction which the law has withheld.

3. Action to Set Aside Judgment—Truth May be Shown—Verity of Judgment.—In a direct attack upon a judgment by suit filed to set it aside, the truth may be shown against either the sheriff's return of service or the recital of service in the judgment. The verity ascribed to judgments of courts of general jurisdiction does not attach in a direct proceeding to vacate the judgment.

4. Return of Officer—Absence of Summons—Presumptions— May be Rebutted.—The presumption that the officer did what he certifies he did, and that in the absence of a summons from the record the court had something before it to warrant the judgment are presumptions of fact, which may be overcome by evidence.

5. Void Judgment—Proceedings to Vacate—How Regulated.— Proceedings to open up a void judgment because of fraud in the obtention, or because rendered without service of process or appearance, are not governed by the Code of Practice regulating the granting of new trials, but rest upon the common law and the statutes for relief from fraud or misadventure.

DISHMAN & DISHMAN and S. B. DISHMAN Attorneys for Appellant.

GRANT E. LILLY, Attorney for Appellee.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Affirming.

In a suit to settle the estate of James Hogg, deceased, which was pending in the Letcher circuit court many years ago, Judge H. C. Lilly became a party, asserting a lien on certain lands therein sought to be sold at the instance of the administrator. It was finally adjudged that Lilly had an enforceable lien. The land was decreed to be sold, and in pursuance was sold, when Lilly became the purchaser. A deed

was executed to him by the court's commissioner, and a writ of possession awarded him. The land was situated in Knott county. But the suit was begun in Letcher many years before Knott was made. In December, 1892, appellant filed this suit in the Letcher circuit court, claiming that he was the owner of the land, and in its actual possession, asserting that he had never been a party to the suit in which it was sold to Lilly, and asked that the execution of the writ of possession awarded to Lilly be enjoined. At the August term, 1893, of the Letcher court, a judgment by default was rendered in behalf of the plaintiff, appellant here, enjoining H. C. Lilly, and Watts, the sheriff of Knott county, to whom it was said the writ of possession had been directed, from executing the writ, and quieting the title of the plaintiff to the land. The judgment recites: ''The defendants, H. C. Lilly and S. J. Watts, having been duly summoned herein more than twenty days before the present term of this court, and likewise served with the order of injunction herein more than twenty days before the present term of this court, the petition herein on the calling of said cause was taken as true and submitted for the court's opinion and judgment, and the court being advised from the pleadings orders and adjudges,'' etc. Judge Lilly died in the year 1900. In 1903 his son, who was representing the widow and sole devisee of Judge Lilly, learned for the first time that the title to the land was in dispute by Francis, and that the latter claimed it had been settled in his favor by a judgment of the Letcher circuit court The records were then examined, and, no summons being found with the files of the suit, a motion was made, on notice, in this action to redocket it, and to vacate the judgment because it was void, having been rendered without process against, or appearance of,

the defendants. The notice and motion contained the grounds of attack. No issue was joined by pleading, but it seems to have been assumed that the averments of the notice and motion were traversed. The burden was taken by the defendant, the movant, and proof for and against the motion was heard. The defendant (appellee) also tendered an answer to the action of Francis v. Lilly, etc., traversing its averments, and pleading certain other matter in estoppel, which constituted a good defense to that action. The circuit court, upon the hearing, found and adjudged that summons had not been served upon the defendants, that the judgment rendered by default in August, 1893, was void, and it was consequently vacated. The answer of Lilly's executrix was allowed to be filed. From the order setting aside the judgment and awarding a new trial of the action of Francis v. Lilly, the plaintiff, Francis, prosecuted this appeal.

A judgment awarding a new trial, granted after the term at which the original judgment was rendered, is a final order, from which an appeal lies. Tyler v. Wiggington, 11 Ky. Law Rep., 367; Snyder v. Cox, 53 S. W. 263, 21 Ky. Law Rep. 796; Turner v. Johnson, 35 S. W. 923, 18 Ky. Law Rep. 202; Williams v. Williams, 107 Ky. 496, 21 Ky. Law Rep. 1208, 54 S. W. 716. Appellant takes the position that the recital of service in the judgment, together with the lapse of time, and the habit and practice of courts of general original jurisdiction of rendering judgments, raise a presumption as to the verity of the fact of service that is not and cannot be overcome by the negative evidence shown by a failure of the record to contain the sheriff's return. The courts take two views of this subject: One is that public policy requires that there be accorded an absolute verity to the judgments of courts of general jurisdiction; that

they should be accepted as having found and adjudged
every necessary antecedent fact to exist upon which
their right to proceed to the exercise of their juris-
diction depended. These courts hold that, where the
court actually decides the fact to be that the defend-
ant has been served with process in the case, it is
as clearly within its province to determine it as is
any other fact in the case; and that its judgment
thereon ought to be as conclusive as upon any other
fact which may be adjudged. They hold that the
security of titles and the welfare of society are best
conserved by the adherence to the rule which ascribes
an absolute verity to the judgments of such courts,
relying upon their integrity and care to not proceed
to a judgment unless the defendant is before the
court, even though, in rare instances, by some over-
sight or even fraud, the rights of a particular person
may be concluded without his having had an oppor-
tunity for a hearing. And this view of the subject
seems to be favored by a vast majority of the Amer-
ican courts, and has the indorsement of Judge Free-
man in his treatise on Judgments. Sections 131-134.
The other view of it is that the court cannot make
a record at all until, and unless, it has jurisdiction
of the parties and the subject-matter of the suit, and
that, if the parties are not before the court by process
or appearance, the enrolled proceedings are of no
more effect than scrap paper; that the law contem-
plates, upon reasons of natural justice, that no man
shall be deprived of any of his natural rights of
person or property without an opportunity of being
heard. It is said no court can make jurisdiction for
itself; it must be conferred by the law; that, until the
parties are before the court, it is powerless to deter-
mine their rights of property or person, because the
law withholds the jurisdiction to do so until the liti-

gants are brought before the court; and that the mere recital by the court that it has got a party before it, cannot make the fact so if it is not so, and that such false recital cannot and ought not create a jurisdiction which the law has withheld. The tendency of the decisions of this court seems to have been toward the view last stated. The divergence noted above is in the application of the principle to collateral attack upon such judgments. But all seem to concur in, or at least are not necessarily in conflict with, the view that, upon a direct attack upon a judg·ment in an action brought directly in the court rendering it, to impeach and annul it, the austere construction contended for by the first-class of cases does not apply. All seem to agree that for fraud practiced by the plaintiff, or upon non-service or non-appearance of the defendant, the latter may have the judgment set aside in a direct proceeding for the purpose. And that is what this case is. There are most cogent reasons why such judgments ought to be immune from collateral attack, but which have no place in just thinking and right dealing, when the party sought to be bound by them is attempting in the proper forum to have them set aside so that they may not conclude him wrongfully.

An examination of some of the Kentucky cases will show the trend of this court's holding on the subject. Taylor v. Lewis, 2 J. J. Marsh. 400, 19 Am. Dec. 135, holds that, where the sheriff returns the summons as executed, when in fact it had not been, and judgment was rendered by default, the defendant is concluded; that his remedy is an action against the sheriff for his wrong. The original judgment was obtained at law. The attack was by a suit in equity to set aside

the judgment at law, on the ground that the defendant had not been summoned or appeared in the action. At that time that was the only method of opening up a judgment at law after the term of court at which it was rendered. The opinion is criticised by Freeman in his note to the case, page 137, 19 Am Dec., who said of it, "it can hardly be considered the prevailing rule at the present day." Taylor v. Lewis, supra, was followed and approved in Shoffet v. Menifee, 4 Dana, 150. In each of these cases the plaintiff was without fault. The two foregoing opinions were departed from, though noticed, in the subsequent case of Bramblett v. McVey, post. In Chambers v. Handley, 4 Bibb, 284, a judgment at law was vacated by a direct proceeding in equity upon the showing that the summons had been falsely returned as executed, having been procured by the fraud of the plaintiff, by which a default judgment against the defendant was obtained. Whether the default judgment could have been collaterally attacked upon the same ground was not discussed. Thomas v. Ireland, 88 Ky. 581, 11 Ky. Law Rep. 103, 11 S. W. 653, 21 Am. St. Rep. 356, followed and applied the principle of Taylor v. Lewis, supra, but in that case one defendant had procured the sheriff to falsely note the service of the summons on a co-defendant without the knowledge of the plaintiff. In Robinson v. Mobley, 1 Bush, 196, the judgment recited: "The defendant having been duly summoned and failing to answer," judgment by default was rendered. There was no summons in the record. On appeal it was held that the recital in the judgment was not evidence of the service. But it was furthermore held that it was a clerical misprision to enter the judgment before the service of the summons, an error which must be called to the attention of the trial court first before an appeal will lie. On

the latter point—that of clerical misprision—this case
was expressly overruled in Long v. Montgomery, post,
but left intact otherwise.   In Long v. Montgomery, 6
Bush, 394, there was a judgment by default.   The
record did not show any summons. The decree recited
that the summons had been served in due time.   There
was no appearance by the defendant.   On appeal it
was held that the judgment was void, affirming Robin-
son v. Mobley; that the recital in the judgment that
process was duly served was of no effect. In Bramblett
v. McVey, 91 Ky. 151, 12 Ky. Law Rep. 760, 15 S. W.
49, which was an indictment for trespass, the sum-
mons was returned executed on the defendant, John
W. Bramblett, who not appearing, judgment was
rendered upon verdict by default.   He brought an
action to set aside the judgment, upon the ground
that the summons had never, in fact, been executed
upon him.   It was held that no one should be pre-
cluded from showing, in a direct attack against a
judgment rendered against him upon return of sum-
mons reciting that it was executed, that it had not
been in fact executed; whether the falsity existed
through fraud of a party or the mistake of the officer.
Taylor v. Lewis, supra, and Shoffet v. Menifee, supra,
were held to be no longer authority to the contrary.
The case of Bramblett v. McVey was also in the
Superior Court on appeal, where the same conclu-
sion was reached as in this court.   11 Ky. Law Rep.
849.   In Howse v. Reeves, 76 S. W. 513, 25 Ky. Law
Rep. 949, on appeal it was held that the court could
not render judgment against a defendant not sum-
moned or appearing, and that an appearance by an
unauthorized attorney did not confer such authority.

From these causes, the rule in Kentucky is found
to be that, in a direct attack upon a judgment by suit
filed to set aside the judgment, the truth may be

shown against either the sheriff's return of service, or the recital of service in the judgment, and by appeal that the recital in the judgment, to the effect that summons had been duly served, will not supply service; and, if the truth be that the defendant had never been served with summons, or proceeded against with warning order, or had not entered his appearance by authorized attorney or in person, the judgment by default will be set aside. This is not a collateral attack upon the judgment. The verity ascribed to judgments of courts of general jurisdiction does not attach in a direct proceeding to vacate the judgment. The presumption is that the officer did what he certifies he did, and that he did it at the time and in the manner required by law, unless his certificate shows to the contrary. The presumption may be, further, in the absence of a summons from the record, that the court had something before it to warrant its judgment. But these are not irrebuttable presumptions, nor are they presumptions of fact to be weighed against evidence. They merely place the burden of proof upon him who attacks them to overcome them by evidence.

This brings us to consider the proof in the case. Appellee shows that her testator, H. C. Lilly, lived, and had lived for 40 years, at Irvine, the county seat of Estill county, 125 miles or more through the country from Whitesburg, the county seat of Letcher county. He had been circuit judge of the district, including Letcher and Knott counties, for the term ending January, 1893. He was a painstaking, careful, and successful lawyer and business man. He had been prosecuting his claim against this property with persistency for many years, showing no intention of abandoning it. He held the last term of the Letcher court in November of 1892, closing it on December

2, 1892. Thence he went to Hindman, the county seat of Knott, and held his last term in that county beginning December 5, 1892. The petition was prepared by attorneys, one of whom resided at Whitesburg, some months before December, 1892, but it was not filed till December 8, 1892. It is indorsed: "Summons and 2 copies and injunction and 2 copies issued to Knott county, December 8, 1892. R. B. Bentley, clerk." As a matter of fact it is clearly shown that the injunction was not then granted, and no copies were issued at all for some months later. The indorsement is in the handwriting of one of plaintiff's counsel, though signed by the clerk, and was evidently made in anticipation of what was expected to be done. Plaintiff was not present when the petition was filed. But the attorney says he gave the summons and copies to one Amburgy, who was present as a friend, who was a kinsman of plaintiff, and who took the process to Knott county, and, he says, delivered it to some officer to be served, but he does not remember to whom he gave it, and does not know whether it was in fact served.

Defendant introduced the coroner of Knott, the jailer, and a number of constables of that county, all of whom knew Judge Lilly, but none of whom had ever had any summons or other process against him, and, of course, therefore, never served any. Watts, the then sheriff, who was joined as a defendant, testified that no summons or other process in the case had been served on him at any time. He is a disinterested witness. It was as necessary and as easy to have served him with the process in Knott, where he lived, as to have served Judge Lilly there. The fee for serving summons on each was the same. The copy of the order of injunction granted some months later was served on Judge Lilly by the sheriff of Estill

county, the place of his residence, but the sheriff testified that he served no summons on him. The law requires the circuit clerks to enter the return of officers executing summons in the docket of the court. Such was the general practice of the clerk of the Letcher court, but the docket being produced showed no return at all in this case, though returns were entered in 8 or 10 other cases, appearances at the same term. Grant E. Lilly, son of H. C. Lilly, an attorney for defendant, testified that plaintiff claimed to him that he had sent the summons to Estill county to the sheriff to be served, but it is seen that the sheriff said he had no such process. Plaintiff did not offer to explain or contradict this testimony. As Judge Lilly was leaving the Knott court at its close, one of its officers rode with him to the next county. Judge Lilly then placed this land in the care of this friend, with directions to keep off trespassers. Nothing was said of the suit. All this shows as clearly as it seems possible to prove a negative under the conditions existing in this case, that there had never been an execution of the summons on the defendants.

On the other side, Judge Dishman, one of counsel for plaintiff, testifies that he drew the default judgment in the case. He is known to be a careful and painstaking lawyer. He says his custom was always to see to it that summons was served before preparing such judgments for entry, but that he has no recollection of having seen the summons or return in this case. Plaintiff's other counsel says that he did see the summons. We quote from his testimony: ''Q. State whether or not the process issued on the petition was ever returned, and, if so, whether or not it was indorsed as having been executed on the defendants H. C. Lilly and J. T.

Watts, or either of them? A. Yes, sir; it was
returned, and it was indorsed executed on both of the
above-named defendants. Q. Did you see that pro-
cess after it was returned and so indorsed? A. Yes,
sir. Q. State whether or not that process was re-
turned and indorsed as having been executed on both
the defendants and in the papers at the time the judg-
ment was prepared, at the August term, 1893. A.
The process was returned, and showed that it had
been executed on both the defendants at the February
term, 1893, but I do not remember about that particu-
lar thing at the August term, 1893. I remember that
at the February term, 1893, Mr. Simeon Johnson
claimed that he represented Mr. Lilly, and he had the
case passed at the February term, 1893, for the pur-
poss of, he said, preparing a motion to have the case
transferred to the Knott circuit court, and got the
case passed for that purpose, and, when he got the
case passed, we submitted the case to the court and
got the injunction or temporary restraining order to
hold down the execution of the fieri facias until there
were further steps taken in the case, and then at the
August term of the court they did not take any
further steps, and we made a motion to take the
petition as true, and it was submitted to the judge."
There is nothing here showing who executed the sum-
mons. It is not enough to say that the summons "was
indorsed as having been executed." Indorsed by
whom? Executed where and when? This testimony
fails to state such facts as from them the court could
say that it was a legal service, or a service at all. It
may have shown that it was served by a private citi-
zen, without authority, yet it would have shown that
it was served, in the language of the witness. The
return, to be evidence of service, must have been

signed by an officer authorized by law to serve a summons. Proof of the service is the officer's return or certificate. Proof of the return, if the certificate is lost, would be the testimony of some one who saw it, and who stated its contents, including its signature. This testimony, therefore, falls short of proving the return or the service at all. We do not discredit the statements of the counsel who testified. All they said may be accepted as true, still, they produce no evidence whatever of the legal service of the summons.

We have seen that the recital in the judgment is not evidential. It follows that the circuit judge was warranted in holding that the defendant had not been summoned in the case.

As to the action of the attorney, Johnson, there is no authority shown, or attempted to be shown, for his appearance, even if the witness' recollection of that matter is not at fault at this late day. Furthermore, he is shown to have been a near kinsman of plaintiff, and a kinsman of the people whom Judge Lilly had been in litigation with for so long over this title, facts known to Judge Lilly. Mr. Johnson did not reside at Whitesburg, but, if he then lived in Kentucky at all (he had, for some years been in the West), he was residing at Pineville, probably 75 miles from Whitesburg. Judge Lilly had two sons who were then practicing lawyers of many years' experience—one or both of them had been his partners—and who lived at Irvine, or near there. These facts, we think, negative the probability of Mr. Johnson's having been authorized to appear for Judge Lilly in the case. Besides, the record shows no step whatever or appearance by Johnson.

Proceedings to open up a void judgment because of fraud in its obtension, or because rendered without service of process or appearance, are not governed

by the Code of Practice regulating the granting of new trials, but rest upon the common law and the statutes for relief from fraud or misadventure. Newland v. Gentry, 18 B. Mon. 666; Stevens v. Deering, 9 S. W. 292, 10 Ky. Law Rep. 393; Spencer v. Parsons, 89 Ky. 577, 11 Ky. Law Rep. 769, 13 S. W. 72, 25 Am. St. Rep. 555; Riglesberger v. Bailey, 102 Ky. 608, 19 Ky. Law Rep. 1660, 44 S. W. 118.

There was no plea of limitation to the, proceeding.

Perceiving no error, the judgment awarding appellee a new trial is affirmed.