## May et al. v. Sword et al.

(Decided December 9, 1930.)

E. J. PICKLESIMER and CHILDERS & BOWLES for appellants.

STRATTON & STEPHENSON for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The facts in this case are difficult to grasp. Counsel for one of the appellants, with apparent unconscious humor, wrote into his brief this sentence:

"No two of the Judges dealing with this case seemed to *misunderstand* the law and facts alike."

The case was before two or more special judges. A clear understanding of the facts is necessary.

One J. M. Sword died in Pike county about the year 1912. He had been married twice. By his first wife he had three children, two girls and one boy. At the time of his death his girl, Mary, had married a man named Ray, and Rebecca had married a man named Phillips. John G. was his son, and he was also a man with a family. Within a few weeks of the date of his death he laid off and executed deeds to each of his adult children for a certain tract of land designated and defined. The deed, in each instance, contained a statement that the land was the full share of the grantee in the estate of J. M. Sword.

His last wife, a young woman named Virginia, was living at the time of his death, and she had by him a young child named James H. Sword. He was the only child by the second marriage.

After having conveyed away certain portions of his land to his adult children, he had left about 350 acres. At the time of his death he left considerable personal property, and about $12,000 in a bank, which money he had received a short time before for mineral rights sold under the lands which he then owned.

His elder son, John G., became administrator of his estate. Almost immediately after he had been appointed, Virginia Sword, in her own right and as next friend for her infant son, instituted a suit in the Pike circuit court alleging that the three children by the first wife of her

husband had received more than their share of the estate of their father, and prayed that her son be adjudged to have the whole of the undisposed estate. This prayer had for its foundation the allegations that the older children had received more of the real estate of their father than the value of the undisposed of portion of his land. In her suit the widow, Virginia, prayed also for a settlement of the estate.

An agreement was reached whereby the suit was settled. Each of the adult children, with his or her spouse, executed a deed of conveyance to Virginia Sword and her young son, James H. Sword, covering the land owned by their father at the time of his death. The deed also contained a provision that the widow accept one-fifth of the personal property left by her husband as her distributable share instead of one-half allowed to her by law.

James H. Sword and his mother, Virginia, resided on the land for more than ten years, and, if there was any complaint or dissatisfaction over the settlement which was made in 1912, the record does not disclose it. The record does disclose, however, that on the 12th day of August, 1922, Virginia Sword filed her petition in the Pike county court against her son asking for a partition of the land which had been conveyed to her and him, as she contended, by the children by the first wife. The action proceeded to judgment, and the land was divided between them and deeds executed by a special commissioner. Some time thereafter Virginia Sword sold the greater part of the land allotted to her to the appellants, Noah May and Jeff May. Later they sold the timber on the land to the W. J. Fell Company, and that company cut the timber and removed it from the land. The company also purchased from Virginia timber on the part of the land which she retained. After the timber had been sold by Noah May and Jeff May, they conveyed a part of the land to J. F. May. There is some confusion in the record about the Mays. It appears that Jeff May and F. J. May have been treated as the same man at times. R. H. Lyons, who became a party to the action, appears to have been the man who cut and removed the timber for W. J. Fell Company.

In September, 1927, James H. Sword, having passed the age of fourteen, selected James Sturgell as his guardian. W. K. Elliott had been his guardian, and his

name appears in the record, as will be shown later, as having acted on behalf of the infant. After Sturgell was appointed guardian, he instituted suit in the Pike circuit court against Noah May, Jeff May, F. J. May, R. H. Lyons, and W. J. Fell Company, seeking to recover $8,-000 for timber which had been wrongfully cut from the land of the infant. The petition is built upon the idea that Virginia Sword had no interest in the land owned by J. M. Sword at the time of his death other than a homestead or dower, and that she therefore had no title to convey to the Mays, and that they had no title to the timber when they conveyed it to W. J. Fell Company. He asked for a cancellation of the deed executed to Virginia Sword in the partition proceedings and the deed executed by her to the Mays and the deed executed by two of the Mays to the other May. He also asked for a cancellation of the deed executed by the children by the first wife to Virginia and her son in so far as it attempted to convey any greater interest than they owned in the land. The allegation seems to be to the effect that the last-mentioned deed was intended only to surrender any claim that the three children by the first wife had in the undisposed of real estate, thus leaving the title in the infant subject to the dower or homestead interest of the mother.

In the answer of the defendants, they claimed that Virginia Sword purchased a half interest in the undisposed of land by surrendering one-half of the personal property to which she was entitled and accepting in lieu thereof one-fifth. It was also claimed that the partition suit and the deed executed to Virginia pursuant thereto vested her with title to a one-half interest in the land, and that the judgment had never been attacked and remained in full force and effect. In response to this last defense, the guardian of the infant contended that the partition suit and the judgment and deed were void because no summons was executed on the infant and for other reasons.

It is obvious that the first question which should be determined is whether the judgment of partition was void, or only voidable. If it was void, it may be attacked in collateral proceedings, but, if it was only voidable, it can only be attacked in a direct proceeding. This is a collateral attack. A number of irregularities are pointed out which might render the judgment voidable,

but it is unnecessary to consider them. If no summons was executed on the infant, and he was not before the court when the judgment was entered, the judgment and all proceedings were void. If he was before the court, the proceedings were not void, although they may have been irregular. The suit in that case has been made a part of this record. The docket is copied by the clerk, and it does not show that a summons was issued. It is entirely silent on that point. The copy of the docket gives the style of the case, and following that is a memoranda, "No return of process shown." Whether this appears upon the docket, or whether the clerk merely makes the statement because the docket is blank, we are left to conjecture. It does not show, in fact, that the summons was or was not issued or executed. The judgment entered in the partition suit contains this language:

> "This cause coming on to be heard and it appearing to the court that the defendant, James H. Sword an infant under the age of twenty-one years, had been duly summoned by serving a copy of the summons upon W. K. Elliott the statutory guardian for the said infant, James H. Sword and that the said W. K. Elliott failing to plead for the infant, James H. Sword and being of the opinion that it is beneficial to his ward, James H. Sword, that the land set out and described in the petition be partitioned between the plaintiff, Virginia C. Sword and defendant, James H. Sword."

This brings us squarely to the question whether the recital in a judgment that a summons has been executed is sufficient to show its execution against a collateral attack on the judgment on the ground that no summons was executed on the party, and that there was no appearance for him. It is the universal rule in this jurisdiction that a domestic judgment rendered in a court of general jurisdiction cannot be collaterally attacked unless the want of jurisdiction appears upon the record. Ratliff v. Childers, 178 Ky. 102, 198 S. W. 718; Logsdon v. Logsdon, 204 Ky. 104, 263 S. W. 728. Where a collateral attack is made on a judgment of a domestic court of general jurisdiction, the pleader cannot satisfy the rule by merely alleging the absence of a jurisdictional fact, but he must go further and allege that the record actually shows, on its face, the absence of a jurisdictional fact.

It was held in some of the earlier cases that a statement in a judgment that a summons had been executed was not proof of that fact, but these cases appear to have been dealing with a direct attack upon the judgment. These cases are cited in the case of Francis v. Lilly, 124 Ky. 230, 98 S. W. 996, 30 Ky. Law Rep. 393. That opinion points out the conflict in opinions over the question of the effect of the recital in a judgment that summons was executed, and reached the conclusion that in a direct attack upon a judgment such a recital was not conclusive. We are not dealing, however, with a direct attack upon a judgment. The attack made on the judgment of partition is a collateral attack. In the case of Siler v. Carpenter, Jr., 155 Ky. 640, 160 S. W. 186, 189, this court, in discussing the question now before us, made this statement:

"In addition, the judgment itself recites service thereof; and, where the record affirmatively shows the fact of service or process, it cannot be contradicted in this manner. The Code of Practice prescribes the time and manner in which a judgment may be vacated; it has not been followed in this case, and in the absence of averment of fraud and evidence in support of such charge, if the same be denied, the record, showing as it does in this instance the service of summons on appellant, imports absolute verity."

The court cited Stevenson v. Flournoy, 89 Ky. 561, 13 S. W. 210, 11 Ky. Law Rep. 745, in support of the conclusions reached. In the late case of Wolverton v. Baynham, 226 Ky. 214, 10 S. W. (2d) 837, this court took a strong position in favor of importing absolute verity to all judgments, unless there is an affirmative showing that the proceedings in the former suit were in fact, void. The tendency is towards the conclusive presumption of the validity of judgments regular on their face.

In the case under consideration, the judgment which has been attacked recites that summons was executed on the infant by service on the guardian of the infant, specifically mentioning the name of the guardian upon whom the service was had. It was the duty of the court having the action before it to determine whether the parties were properly before the court. Having done so and made a solemn record of its findings, the judgment may not be attacked in a collateral proceedings.

As long as the judgment dividing the land between Virginia Sword and James H. Sword remains in effect, it shows title in Virginia Sword to the land she sold to the Mays and on which the timber was cut, and reliance upon that title by the appellants was at the time justified. Consequently, the judgment should not have gone in favor of appellees either for the recovery of the land or the value of the timber cut. The infant has ample remedies to be relieved of the affect of the judgment of the county court if he has legal cause for relief.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.