ROBERT FAULKNER, PLAINTIFF IN ERROR, V. ELLEN KLAMP, DEFENDANT IN ERROR.

1. **Fraudulent Representations:** EVIDENCE. In an action founded on fraudulent representations in the sale or barter of property, it is competent, after proof of the representations concerning the condition and character of the property, to prove the falsity of such representations by showing the actual condition of the property immediately after the representations were made. Evidence examined, and *Held,* Sufficient to lay the foundation for such proof.

2. ————: RESCISSION OF CONTRACT: REPLEVIN. Where in a trade or barter of property the trade is procured by one of the parties by false and fraudulent representations as to the quality of the property disposed of by him, the defrauded party may, upon the discovery of the fraud, rescind the contract and maintain replevin for the property procured by such fraud. And this may be done without returning the property received by the defrauded party when such return is impossible, or where the party guilty of the fraud has by his own act put it out of the power of such defrauded party to make such return.

3. **Fraud** may consist in words, acts, or the suppression of material facts with the intent to mislead and deceive.

4. **Verdict.** When the testimony is conflicting the verdict of a jury will not be set aside and a new trial ordered unless the verdict is clearly wrong.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

*George H. Hastings* and *R. D. Stearns*, for plaintiff in error, on rescission of contract cited: *Barnett v. Stanton*, 2 Ala., 181. *Desha's v. Robinson*, 17 Ark., 228. *Chance v. Com's Clay Co.*, 5 Blackf., 441. *Pettus v. Roberts*, 6 Ala., 811. *Buel v. Tate*, 7 Blackf., 55. *Calhoun v. Davis*, 2 Ind., 532. *Teter v. Hinders*, 19 Ind., 93 and 128. *Conner v. Henderson*, 15 Mass., 319. Vendee should have returned goods. 1 Parsons Cont., 593. See also *Blackburn v. Ostrander*, 5 Neb., 222. Praise of article or affirmation of soundness when exposed for sale is not a warranty, unless so intended by the parties, and such intention must be proven. *House v. Fort*, 4 Blackf., 493. *Duffer v. Mason*, 8 Conn., 25. *Erwin v. Maxwell*, 3 Murph., N. C., 241. *Foster v. Caldwell*, 18 Vt., 176. 5 Wait's Actions and Defenses, 562.

*A. J. Sawyer* and *L. C. Burr*, for defendant in error, cited: *Jones v. Edwards*, 1 Neb., 170. *First National Bank v. Yocum*, 11 Id., 329. *Phillips v. Jones*, 12 Id., 213. *Little v. Woodworth*, 8 Id., 281. *Thurston v. Blanchard*, 22 Pick., 18. *Coghill v. Boring*, 15 Cal., 218.

REESE, J.

This action was instituted by the defendant in error for the recovery of the possession of a team of horses which she alleged was wrongfully detained by the plaintiff in error. The trial in the district court resulted in favor of the defendant in error, and the cause is brought into this

court by the defendant below. The plaintiff and defendant traded teams. Faulkner, being the owner of a span of mules, exchanged them to Klamp for the horses in dispute in this action. One of the mules died, and Klamp offered to return the surviving one, and commenced this action claiming that Faulkner had perpetrated a fraud upon her in his representations as to the quality and condition of the mules.

A number of errors are assigned by the plaintiff in error, which we will briefly notice in their order:

1. It is claimed that the court erred in allowing two witnesses "to testify as to the condition, soundness, usefulness, etc., of the mules, no warranty or false representation having been proven or attempted to be proven." By an examination of the testimony as shown by the transcript it will be seen that the agent of the defendant in error, who made the trade, testifies that Faulkner represented them as true, good, and sound, and good pullers, that they were sound, healthy mules; that they were worth more than the horses "for hard work on the machine, and such like." The witness further testifies as follows: "He said just before, he would recommend them to be sound, healthy, hard workers, and good to eat and drink; if they were not I could return them." And again: "I told him I wanted to get a team heavy and stout enough to do work on the threshing machine. He said this was the team that could do it." The witness further testifies that in making the trade he relied upon those representations, that he took his word and told him he would take his word for it. Without further referring to the testimony upon this point we think enough was shown to lay the foundation for proof that these representations were false, which could be done by showing the condition of the mules immediately after the representations were made, and that the plaintiff in error knew them to be false when he made them. In this ruling of the court we perceive no error.

The second assignment of error is that the court erred in giving the following instruction asked by defendant in error: "If the jury believe from the evidence that defendant, in order to get possession of plaintiff's horses and money in exchange for his mules, made false and fraudulent representations as to the age, soundness, and ability to work of his mules, known by him to be false, and which false representations were relied upon by the plaintiff, and but for which she would not have made the trade; then the plaintiff did not, as against the defendant, lose her title to the horses, and replevin will lie, provided said plaintiff did, upon discovery of the fraud and within a reasonable time thereafter, offer to return said property or as much thereof as was practicable, to the defendant." As we understand the position of plaintiff in error, the latter portion of this instruction is objected to for the reason that it permits the rescission of a contract obtained by fraud without the return of the property received, when it cannot be so returned. The rule contended for by the plaintiff in error that a contract cannot be rescinded without mutual consent unless the parties thereto can be placed *in statu quo,* and that a party cannot annul his contract until he restores what he has received under it and places the other party in interest in the same position he occupied previous to the contract, may be conceded to be the correct rule as generally stated; yet there are exceptions to this general rule, as, where the. party to whom the return should be made has by his own act placed it out of the power of the parties seeking the rescission to make the return. 2 Parsons on Contracts, 680. 1 Denio, 69. Wells on Replevin, § 331. Or where the property received by the defrauded party was worthless. 5 Wait's Actions and Defenses, 509. *Wolf v. Dietzsch,* 75 Ills., 205. The party aggrieved must do what he can to place the other *in statu quo* if any action on his part can have that effect. *Wilbur v. Flood,* 16 Mich., 45. But where it is impossible to do

this, or where nothing would be saved to the party guilty of the fraud, or where by his own act he has deprived the other party of the power to do this, it will not be required. *First National Bank v. Yocum*, 11 Neb., 328. It is evident, from the testimony in this case, that the mule which died was of no value. That it died from a cause which was operating upon it at the time of the trade, and that the plaintiff in error would have been in no sense the gainer thereby had it been returned. The testimony also tends to prove that the plaintiff in error left the neighborhood in which the defendant in error resided, and in which the trade was made, soon after the exchange, and that the defendant in error, prior to the death of the mule, sought him but could not find him, he having gone to Peru, in Nemaha county, and before the defendant in error knew of his return the mule was dead and its return at that time was impossible. These facts would relieve the defendant in error from the necessity of making the return of that part of the property received by her. In this instruction there was no error.

The next instruction complained of is as follows: "Misrepresentation may be either by words or acts, or the suppression of material facts with the intent to deceive. The important inquiry is, whether the plaintiff was willfully deceived or misled by the defendant to her injury." This instruction was given at the request of the defendant in error. While it seems not to have been carefully drawn, yet there can be no doubt but that the jury fully understood its meaning. That misrepresentation may be either by words, acts, or the suppression of material facts to the injury of another, is well settled. Bigelow on Fraud, 36 *Tallon v. Ellison*, 3 Neb., 74.

Two instructions requested by the plaintiff in error were refused by the court, but we think the questions involved in these instructions have been fully answered by the foregoing, and no further attention to that part of the case is necessary.

The next and last point requiring attention is, that the verdict of the jury is not sustained by sufficient evidence and is contrary to law.

It is well settled in this state that the verdict of a jury will not be set aside if there is any evidence to support it, unless it is apparent from an inspection of the record that the verdict is clearly wrong. The testimony is conflicting and in the matter of what occurred at the time of the trade it is widely divergent and confined to the parties to the trade; but as to which of these was entitled to credit, the jury were the sole judges, and their decision must be treated as final. If the testimony adduced on the part of the plaintiff was true, the verdict is correct. As to whether that testimony was entitled to belief was a question wholly for the jury. The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.