## Logsdon v. Logsdon.

(Decided July 1, 1924.)

### Appeal from Edmonson Circuit Court.

1. Divorce—Action in One Court Held Collateral Attack upon Judgment of Another.—Action in one circuit court by wife for divorce and alimony was a collateral attack on judgment of another circuit court granting husband divorce without alimony, and latter could not be set aside by evidence aliunde record showing that court did not have jurisdiction, in that husband was guilty of perjury as respects affidavit as to residence of wife.

2. Divorce—Action in Another Court for Alimony After Divorce Not Maintainable.—Independent action cannot be entertained for alimony after there has been a judgment of divorce in another court of co-ordinate jurisdiction.

3. Judgment—Any Attack of Judgment Other than Methods Pointed out by Statute Collateral Attack.—Any attack on a judgment other than by methods pointed out in Civil Code of Practice, sections 344, 414, 518, is a collateral attack.

4. Judgment—Attack on Judgment Fair on its Face must be by Direct Attack.—Judgment of court of general jurisdiction, fair on its face, cannot be collaterally attacked, but must be directly attacked under Civil Code of Practice, sections 344, 414, 518.

5. Divorce—Court may Prevent Husband Obtaining Divorce Judgment by Fraud and Perjury from Benefiting Thereby.—Court in a proper proceeding can prevent husband obtaining divorce through fraud and perjury as to residence of wife from benefiting by his fraud, though he has remarried and innocent parties would be affected, notwithstanding Civil Code of Practice, section 414.

6. Divorce—Proper Method of Setting Aside Divorce Obtained by Fraud and Perjury.—To set aside a divorce as obtained by fraud and perjury as to residence of defendant wife and her whereabouts, wife must proceed in same court under Civil Code of Practice, section 518, subsec. 4, unless she does not intend to invalidate divorce decree but only desires relief as to alimony, which she may obtain under section 414.

7. Divorce—Remedy of Wife After Setting Aside Fraudulent Divorce Decree.—Wife, on setting aside divorce decree obtained by her husband through fraud and perjury under Civil Code of Practice, section 518, subsection 4, may in such proceeding ask for whatever relief she may deem herself entitled to or may proceed in circuit court of county of her residence either for both a divorce and alimony or either, as she sees proper.

8. Limitation of Actions—Wife Must Proceed to Set Aside Divorce Judgment Obtained by Fraud Within Five Years.—Wife must proceed to set aside divorce decree obtained by husband through fraud within five years after her discovery of fraud under Civil Code of Practice, section 518, subsection 4.

MILTON CLARK for appellant.

M. M. LOGAN, THOMAS, THOMAS & LOGAN and B. M. VINCENT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellant and defendant below, William H. Logsdon, and the appellee and plaintiff below, Emily J. Logsdon, were married on November 13, 1906, and lived from that time until the latter part of the year 1917 in Edmonson county, Kentucky, where they both lived at the time of their marriage and long prior thereto. There were born to them three children. Defendant, either by his voluntary action or by the draft, became a soldier in the American Army in the World War, and his wife, the plaintiff, experienced great difficulties in providing the means of support for herself and children while her hus-

band was in the army. After the war was over and defendant was discharged he manifested no disposition to resume his place in the family, although the parties lived together for a short while when he permanently departed and finally located in McLean county, Kentucky, where his father resided, and after living at the latter's home for more than a year he instituted a suit in the McLean circuit court against his wife, the plaintiff herein, to obtain a divorce from her on the ground that she had abandoned him and refused to live with him for more than twelve months without his fault. In his petition he alleged and swore to it that his wife was a nonresident of the state and was absent therefrom, and that she had been away from the state for more than four months, and that he did not know the place of her residence, nor the place at which a post office was kept where she might be found. On that affidavit the court appointed a corresponding attorney who made the usual report in such cases, and after the taking of very skimpy proof by members of defendant's family, the court on submission granted the divorce, but adjudged nothing therein with reference to alimony.

Plaintiff herein, who was the defendant in that action, knew nothing of the McLean county judgment until some months thereafter, when, ignoring it on the ground that it was void *ab initio,* she filed this action in the Edmonson circuit court against defendant wherein she set out grounds for divorce and in her petition she averred the facts with reference to the McLean circuit court proceedings and charged that defendant's affidavit therein for the obtention of constructive process against her was false and known to be false by him when he made it, and that in doing so he committed perjury and that because thereof that court did not obtain jurisdiction of her person so as to give validity to the divorce judgment it subsequently rendered. She prayed for alimony and all other equitable relief to which she was entitled.

An answer filed by defendant denied the averments of the petition and affirmatively alleged that the McLean circuit court had jurisdiction to grant the divorce, and that the judgment therein rendered was valid, but if not that it could not be collaterally attacked in the Edmonson circuit court and in no event could it be set aside because, being one granting a divorce, it changed the status of the parties which had in the meantime become settled beyond all methods of attack as alleged by de-

fendant having married another woman, followed by the birth of a child. Before filing the answer defendant interposed both a special and general demurrer to the petition, both of which were overruled with exceptions. The reply denied the averments of the answer with some other affirmative allegations which were denied of record. Proof was taken and upon submission the court adjudged that the McLean county judgment was void for the reasons averred in the petition which the court found to be true, and granted plaintiff alimony and from that judgment defendant prosecutes this appeal.

It will be seen that there are presented for our determination two principal questions: (1), whether a judgment of a court of general jurisdiction is void because of false and fraudulent statements by the party in whose favor it was rendered affecting the jurisdiction of the court over the person of his adversary, by which it was made to appear that the court had such jurisdiction when the facts were that it did not; which, reduced to its last analysis and differently stated is, whether it is competent in any event to prove such invalidating and vitiating facts by testimony *aliunde* the record, and in opposition to its recitals; and, if that question should be answered in the affirmative as to either a direct or collateral attack then (2), will a judgment of divorce be set aside and held to be void because of such false, fraudulent and perjured statements made, as we have seen, for the purpose of obtaining jurisdiction of the adversary's person?

1. At the outset we feel that it should be stated that since an opinion of a court should be strictly confined and relate to the facts contained in the record before it, we will not undertake to notice the various rules, either at common law or under our code, relative to what constitutes a direct or a collateral attack of a judgment either of a court of original and coordinate jurisdiction, or of one of an inferior jurisdiction; nor will we engage in a discussion of the rules relative to presumptions in favor of the judgment attacked where it is a collateral one, but will proceed to dispose of the questions presented in the light of our code provisions as heretofore interpreted by this court.

It is insisted, and we think it is true, that this case brought in the Edmonson circuit court is beyond question a collateral attack of the judgment of the McLean circuit court, and it being fair upon its face can not be set aside by evidence *aliunde* that record, although such

evidence might develop the fact that the court did not have jurisdiction to render it. Until it should be set aside by some recognized direct proceeding it must be treated by other courts as valid. We are aware that there are opinions from this court, of which the cases of Bramlett v. McVey, 91 Ky. 151, and Robinson v. Carlton, 123 Ky. 419, are examples, where it was held that the circuit court, which is one of original and general jurisdiction, might enjoin *the enforcement* of judgments in *inferior* courts although fair upon their face and where the record showed the requisite jurisdictional facts, yet there was no effort even in those cases to set aside and expunge from the record the attacked judgment, since the proceeding in the circuit court only attempted to prevent the *execution* of those judgments by restraining the party in whose favor they were rendered, or some ministerial officer whose duty it was to execute them from doing so, and which is entirely a different question from that vacating in its entirety an alleged *void* judgment. This difference, as to the purposes and effects of the two classes of procedures, is clearly pointed out in 15 R. C. L. 725-6, paragraph 179. No such relief is sought in this case, since the very purpose of this action in the Edmonson circuit court is to utterly *ignore* the McLean county judgment and not to enjoin or prevent either the defendant (plaintiff therein) or any administrative officer from *executing or carrying it out*. The purpose is to obtain original relief to plaintiff herein and to allow her to relitigate the differences between her and her husband as though the McLean county judgment had never in fact been rendered. In short, it is sought by this action to expunge from the record of the McLean circuit court the judgment therein attacked, and this proceeding being a collateral attack on that judgment by having been brought in a different court must be treated as any other collateral attack, and it appears to be the universal rule that the attacking proceedings can not prevail where the record of the first judgment shows affirmatively that the court had jurisdiction both of the person and of the subject matter.

It might be insisted, however, that since this court has held in the case of George v. George, 190 Ky. 706, and other cases therein referred to, that a proceeding, the sole purpose of which is to recover maintenance or alimony, is a transitory one, that the Edmonson circuit court would have jurisdiction of this case to the extent

of granting plaintiff a judgment for alimony; but the trouble with that contention is that the cases referred to do not authorize the maintenance of such an action, in a different court, *after* there has been a judgment of divorce in a cause to which the same parties were litigants in another court of coordinate jurisdiction. In the George case, there had never been a prior divorce proceeding filed by the husband or the wife, and consequently there existed no prior judgment of divorce by any court. In the case of Hughes v. Hughes, 162 Ky. 505, the action was not for the recovery of alimony and maintenance, but was brought upon a contract which the husband entered into with his wife after he had fraudulently obtained a divorce from her and to prevent her from opening up that judgment under the provisions of section 414 of the Civil Code for the purpose of obtaining an allowance of alimony. Neither does the opinion in the case of Auxier v. Auxier, 155 Ky. 174, announce a different doctrine, since in that case it was expressly held that another coordinate court of general jurisdiction from the one rendering the judgment of divorce would not entertain an independent suit for alimony, until the judgment granting the divorce was reversed *to the extent* that it found that the wife was a resident of that county. In other words, it was held in that case that without such a reversal the wife could not maintain an independent suit for alimony and maintenance in another court, which is the situation here, since no fact authorizing the maintenance of this action in Edmonson county has been determined in favor of plaintiff contrary to the apparent finding of the McLean circuit court which in no wise has been modified, set aside or reversed and which, as we have seen, is fair upon its face. If, however, there had been an appeal from that judgment, the relief herein sought to set aside the judgment for divorce could not be granted because of the well settled condition of the law to the contrary.

We held in the cases of Baker v. Baker, Eccles & Co., 162 Ky. 683; Harrod v. Harrod, 167 Ky. 308; Ratliff v. Childers, 178 Ky. 102, and Johnson v. Carroll, 190 Ky. 689, that any attack of a judgment other than by the methods pointed out in sections 344, 414, and 518 of the Civil Code of Practice is a collateral attack, and that one made pursuant to the provisions of those sections was a direct attack. Section 344 provides for the obtention of

a new trial of the same cause of action in the same court· according to the methods therein prescribed.. Section 414 prescribes a method by which one constructively summoned may appear in the same action at any time within five years and move for a retrial of the *same* action and obtain any relief to which he would originally have been entitled had he appeared and litigated the questions involved; but that section expressly states that its remedies do "not apply to judgments for divorce, so far as the divorce is· concerned." Section 518, by its express provisions, confines the remedy therein provided for to "the court in which a judgment has been rendered;" and subsection 4 thereof permits a judgment to be vacated or modified after the expiration of the term "for fraud practiced by the successful party in obtaining the judgment;" and there is nothing in that section, or title XII, of which it is a part, excluding divorce judgments from its operation.

It would seem that question (1) *supra,* is sufficiently answered by the remedy given by subsection 4 of section 518, since we can imagine no species of fraud more vicious and vitiating in its nature than the one having the effect to bring a defendant before the court as a party litigant, and to thereby vest the, court with apparent jurisdiction to adjudicate upon his rights, when in truth and in fact the court did not have jurisdiction of his person because of the false and fraudulent statements of plaintiff whereby the necessary facts were made to appear. Surely if the court, under the subsection referred to, could set aside a judgment for fraud in any other respect it also could and would do so when the established fraud furnished the very basis for the authority of the court to take jurisdiction of the cause, and the text writers so hold and the cases so adjudge. The leading case in our court is that of Newcomb's Executor v. Newcomb, 13 Bush 544, which involved a prior rendered divorce judgment, but the action attacking it was brought in the *same court* granting the divorce and which rendered the judgment attacked.

In 15 R. C. L. 704, paragraph 156, the general rule is stated and which is also found in all text writers upon the subject, that "It is generally held that judgments procured by fraud may be set aside or vacated at the instance of one who himself is not a party to the fraud. The principle is well established that courts of justice have power, *on due proceedings had,* to set aside or va-

cate their judgments and decrees, whenever it appears that an innocent party without notice has been aggrieved by a judgment or decree obtained against him without his knowledge, by the fraud of the other party. This right exists although in consequence another party not implicated in the fraud or deceit loses the benefit of the judgment as *res judicata*. There are, however, authorities to the effect that a final judgment, in the absence of irregularity, cannot be attacked for fraud *by motion in the cause*, and that such attack can be made only by bringing an independent and separate action." (Our italics). In paragraph 157, page 706, of the same work, the text says: "Whenever a judgment is the result of a fraud perpetrated upon the court by a false representation of jurisdictional facts, *the court rendering it* may set it aside *in a proper proceeding* instituted for that purpose." (Our italics).

Numerous other cases, both foreign and domestic, as well as text writers, might be cited in support of the same practice, and they also hold with equal unanimity that if the attacked judgment is one of a court of *general jurisdiction* and the record is *fair upon its face,* and especially where it affirmatively shows the jurisdictional facts (not taking into consideration any presumptions in favor thereof), the attack must be a direct and not a collateral one. And it is also the law as expounded with equal unanimity that whatever may be the effect of fraud in the procurement of a judgment in other respects, if it is directed toward conferring jurisdiction on the court of the person of the defendant, by falsely misrepresenting the facts, it may be shown to be void for that reason by the employment of the proper proceeding for the purpose, which necessarily is a direct attack in view of what we have hereinbefore determined, and which remedy we think is provided by subsection 4 of section 518 *supra* of the code.

2. In determining this question there is presented two conflicting cherished public policies, *i. e.,* (a), that no one may benefit himself by procuring a judgment in his favor against one whom, through his own perjury, he makes it appear is before the court for the purpose of adjudicating the questions presented and the rights flowing therefrom, although the cause may be one of divorce and, of course, affecting the marital status, and (b), whether a divorce judgment, though fair on its face, will in a proper proceeding brought for the purpose, which

we have held in this case should be a direct attack, will be declared void *ab initio,* and especially so if the benefited party and the one who perpetrated the fraud has since married and thereby created a situation vitally affecting the rights of innocent parties.   Without any involved question of divorce the law is universal, as we again repeat, that no one may reap the fruits of a judgment in his favor which was obtained by the character of fraud here involved; and if he could do so in a case the purpose of which was to destroy his marital relation resulting as it does in the breaking up of a home, then the courts in upholding such a judgment would, not only acknowledge the impotence of the law to prevent such far-reaching fraudulent results, but would likewise hold out an incentive for the commission of perjury by a dissatisfied spouse in order to untie himself or herself from his or her mate and extend to such spouse the hand of approval because of the law's inefficiencies, and we do not find the law as so holding.

In R. C. L. *supra,* page 706, paragraph 157, the text on the exact point says: ''For example, if a decree of divorce is obtained upon constructive service by plaintiff's falsely alleging that he resided in the county where the action was brought, and that his wife was a non-resident of the state, she is entitled to have the decree set aside on the ground that it was procured by fraud, and the court will, at her instance, vacate the decree and dismiss the complaint for want of jurisdiction.''   There is cited in support of the note the cases of Edson v. Edson, 108 Mass. 590, 11 Am. Rep. 393, and Corney v. Corney, 79 Ark. 289, 95 S. W. 135, 116 A. S. R. 80.   The opinion in the Massachusetts case was rendered by Chief Justice Bigelow, of noted judicial fame, and the proceedings were under facts almost identical with those presented in this case, and in the course of the opinion it is said: ''The statement of the question is of itself sufficient to make it apparent that, if there is no remedy by which judgments so procured to be rendered can be impeached *and annulled,* courts of justice may be made instruments by which the grossest frauds may be successfully accomplished, to the great wrong and injury of innocent persons.   Such a conclusion cannot be supported, unless it is founded on adjudicated cases which this court is bound to regard as obligatory declarations of the law, or upon reasons of the most decisive and satisfactory nature.''    (Our italics).   He then continues by showing that no case, nor

any authority, so far as he was able to discover, denied the right of a court, for the indicated causes and under proper proceedings, to annul, vacate and set aside the judgment, although it was one for divorce.

In the Corney case, involving the same question under practically the same facts and in a procedure of the same nature, Judge McCullough, in speaking for the court, after stating the facts, said: "It is needless to add that appellant, under the state of facts detailed above, committed a fraud, not only upon his wife but also upon the court, in procuring a decree for divorce upon constructive service and in a court which had no jurisdiction of the subject matter. Suits for divorce must be brought in the county where the plaintiff resides. Kirby's Digest sec. 2674. He was then residing in Crawford county. He made affidavit, for the purpose of procuring the issuance of a warning order, that his wife was not a resident of the state of Arkansas, when he knew that she was in the state, and he fraudulently induced her to leave the state immediately thereafter, without disclosing his purpose of suing for divorce."

Mr. Bishop, in his work on Marriage, Divorce and Separation, vol. 2, chapter XLVII, deals extensively with the subject of fraud in the proceedings to obtain a divorce; and in section 1545 of that volume, he says: "A divorce sentence rendered without jurisdiction in the tribunal is absolutely, in the full meaning of the word, void. So that this defect (if it appears on the face of the record) may be taken advantage of in any proceeding, direct or collateral, by a party to it, or any other person. The question presents itself in many aspects and forms, but always with the one result, as the numerous cases cited in the notes to this section and the other sections therein referred to disclose." And in section 1550 of the same volume and chapter it is pointed out that the same consequence will result, notwithstanding there has been a subsequent marriage and birth of children; but whether such an annulment would have the effect to incriminate the new spouse or to bastardize the children, is not treated of in that work, nor do we express any opinion upon it in this case. In section 1556 (same work) it is stated, in substance, that the proceedings to annul the divorce decree, especially when the facts necessary for that purpose rest *in parol proof* and must be developed *aliunde* the record, must be in the same court and cause wherein it is rendered, which conforms to the practice

furnished by subsection 4 of section 518 *supra* of our code.

That the same consequences follow the false and fraudulent obtention of the jurisdiction of defendant in a divorce case was approved by this court in the Newcomb case *supra*. We do not think that the rule prevailing in this court that a judgment for divorce will not be reversed, nor the statement in section 414 of the Civil Code of Practice excluding judgments for divorce from the particular character of relief therein given, militates against the principle which we have been discussing, since neither of those practices is intended to furnish relief against *wholly void* judgments. The evidence as developed by the testimony taken in this case proves conclusively that the defendant falsely made the affidavit in the McLean circuit court case to obtain the warning order therein, he knowing at the time that plaintiff herein and the defendant in that case was then residing with her father in Edmonson county and that she was neither then nor had she ever been a non-resident of this state.

Briefly summarizing our conclusions, they are: (1), that this proceeding is a collateral attack on the McLean county judgment, and since it was one of original general jurisdiction and its judgment shows on its face that it had jurisdiction, a collateral attack upon it in another court of equal jurisdiction cannot be sustained; (2), that the attacked judgment having been obtained by perjury or fraud in order to obtain the benefit of constructive process, it may be *wholly vacated* and set aside in a properly provided proceeding, and that such a proceeding is a suit in the *same* court to set it aside under subsection 4 of section 518 of the Civil Code; (3), that the judgment should be vacated in the manner indicated even before plaintiff can maintain an independent action for alimony alone, but if she does not desire to invalidate the divorce decree of the McLean circuit court she may obtain relief as to alimony and maintenance by going into that court under the provisions of section 414 of the Civil Code, in which case the decree for divorce will not be disturbed; (4), if she succeeds in setting aside the judgment of divorce in her action filed in the McLean circuit court for that purpose, she may either proceed therein for whatever relief she may deem herself entitled under the doctrine announced in the Johnson case, *supra* (12 Bush 485), provided defendant does not object to that venue; or she may proceed in the circuit court of the county of

her residence either for both a divorce and alimony, or either, as she sees proper; but the proceedings by her in the McLean circuit court, if taken, should be done within five years of her discovery of the fraud, as held in the case of Jeffers, Receiver v. Taylor, 178 Ky. 392, and others therein referred to.

Wherefore, the judgment is reversed with directions to dismiss the petition.  Whole court sitting.