HILMA C. WILLIAMS, APPELLEE, V. ELAM C. WILLIAMS, APPELLANT.

FILED OCTOBER 3, 1929. No. 26745.

*Frank H. Woodland,* for appellant.

*A. C. R. Swenson* and *R. E. Robinson, contra.*

Heard before GOSS, C. J., ROSE, GOOD and EBERLY, JJ., and REDICK and RYAN, District Judges.

RYAN, District Judge.

This is an appeal from an order of the district court for

Douglas county, refusing to modify the provisions of a divorce decree in regard to alimony. The decree was entered on September 26, 1924. The petition to modify was filed March 8, 1928, and was based primarily upon a claim that fraud was practiced upon the defendant in securing the contract of property settlement and alimony and the fact that the burden placed upon the defendant by the provisions for alimony was too heavy and that his income was decreasing. The provisions in regard to alimony were based upon a contract entered into some time in June, 1924, shortly before the trial of the original divorce suit. The divorce suit was brought by the plaintiff. It would serve no good purpose here to set out in detail the reasons for the separation of these parties. It is sufficient to say that it is admitted that the defendant had by his conduct with the woman who is now his wife given the plaintiff ample cause for divorce or separation and that the defendant himself had no cause of action for divorce.

It appears from the record that the plaintiff had consulted one Philip E. Horan, a practicing attorney in Omaha, and contemplated bringing a suit for separate maintenance and did not wish an absolute divorce. Mr. Horan was also the attorney for the company of which Mr. Williams, the defendant, was president. Mr. Horan took the matter up with Mr. Williams and, after some negotiations, a property settlement was agreed upon, a summary of which is as follows: First, payment to Mrs. Williams of $1,000 in cash and setting over to her the family home, worth about $6,000, and the family automobile. Second, payment of $250 a month to Mrs. Williams. Third, payment of $50 a month to Mrs. Williams for the support, maintenance and education of their minor son, Carlton, who was at that time eleven years of age; these payments to be increased to $60 a month when he should reach high school, and to $100 a month while he should be in college, and to cease upon the completion of his education. Fourth, payment by Mr. Williams of premiums on $10,000 of life insurance upon his life, payable to Mrs. Williams; these premiums amounting to

$245 a year. Fifth, the assignment of one-third of Mr. Williams' stock in the Williams-Murphy Company to the Omaha Trust Company, as trustee for Mrs. Williams, said stock to be paid to Mrs. Williams upon Mr. Williams' death, should he predecease her, but to be returned to Mr. Williams in case she predeceases him. Sixth, in case of reduction of Mr. Williams' income, total payments provided for by contract to be reduced so as not to exceed 40 per cent. of his earnings.

At the time of entering into this contract Mr. Williams owned 500 shares of stock in the Williams-Murphy Company, the value of which he estimated at $70 a share. In addition to this he had $14,000 in cash, which was loaned to the company, and he also owned a lot in the north part of Omaha, which he afterwards sold for $2,200. This property was in addition to the home and the automobile which he gave to his wife.

The Williams-Murphy Company is a wholesale grocery concern. It appears from the record that there is no income or dividends paid upon the stock, but that all the earnings of the company are used in the payment of salaries, so that, aside from his salary, Mr. Williams has no other income. At the time of the divorce his salary was $10,000 a year. A little less than two years after the divorce decree was entered Mr. Williams' salary was reduced to $7,500 a year, so that, under the sixth provision of the above summary of the contract, the payments for the support and education of the minor son ceased and his payments amounted to only $250 a month. The record also shows that, in addition to the payments of $250 a month, Mr. Williams has kept up the premiums on the life insurance policy in the sum of $245 a year. A short time before the commencement of this action in the district court Mr. Williams attempted to have the contract for a property settlement construed so as to include the $245 insurance premiums within the limitation providing the total payments should not exceed 40 per cent. of his income, but this was denied him by the trial court.

The principal ground for modification urged by the appellant in his petition in the district court and in his brief filed in this court is that a fraud was practiced upon him by Mr. Horan, the plaintiff's attorney, and he alleges that he protested to said Horan against such large payments each month, continuing over an indefinite period and terminating only upon plaintiff's death or her remarriage, and that said Horan advised him that if he did not consent to such a provision the court would in its divorce decree require him to pay a sum of money as permanent alimony, the income of which would approximate the sum of $250 a month, which said sum this petitioner could not pay, and that, acting upon this advice, he signed the contract above referred to. At that time it appears also from the record that the plaintiff intended to file suit for separate maintenance and did not wish an absolute divorce, and that a part of the consideration for the defendant's agreeing to the property settlement was her agreement to bring suit for an absolute divorce. Since the divorce the defendant has remarried, built a new and expensive home and his living expenses have greatly increased.

The trial court found that no fraud was perpetrated upon the defendant, inducing him to enter upon the property settlement agreed upon between plaintiff and defendant herein, prior to the commencement of the divorce action, and that the terms of the property settlement were reasonable under the circumstances of the case; that the reduction in the defendant's salary does not justify a modification of said settlement and the decree confirming the same, in view of the provision in such settlement limiting payments by the defendant to the plaintiff and the minor child of plaintiff and defendant to 40 per cent. of defendant's income, and the court further found that the increased expenditures incurred by the defendant, subsequent to the divorce decree and his subsequent remarriage, do not justify any modification of the terms of said decree.

We are satisfied, from a careful reading of the record, that there was no fraud practiced upon the defendant by the

plaintiff's former attorney. The appellant, however, contends that, under the decisions of this court, it is not proper to allow alimony in continuing monthly or annual instalments throughout the lifetime of a wife, and cites *Cochran v. Cochran,* 42 Neb. 612, and *McGechie v. McGechie,* 43 Neb. 523, in support of that doctrine. Those are both early cases, and in the later case of *Chapman v. Chapman,* 74 Neb. 388, which was decided more than ten years later, this court criticized the decisions in the above cases in this language: "That practice (referring to the practice of allowing a lump sum as alimony, rather than continuing payments) was sanctioned and the contrary course disapproved by this court in *Cochran v. Cochran,* 42 Neb. 612, and *McGechie v. McGechie,* 43 Neb. 523, but we think without mature or adequate deliberation."

Moreover, we have in this case the additional feature of a contract entered into as a basis of a property settlement, and, in this connection, it is well to note that the defendant's principal asset was his earning capacity. He did not have any substantial amount of property, out of which a full judgment for alimony could be paid. He was anxious that the plaintiff sue for an absolute divorce, rather than follow out her intentions and ask for separate maintenance only, and, judging from his conduct, no doubt this was in a large part the consideration for him making a fairly generous provision for the plaintiff. Whether or not the defendant consulted any attorney other than Mr. Horan, the record shows that he was quite capable of taking care of his rights. It was at his insistence that the 40 per cent. limitation was inserted in the contract. He procured a reduction of the cash payment to be made by him; he procured a reduction in the amount of the monthly payments to be made by him for the benefit of his son, Carlton; and there is nothing in the record to indicate in any way that he signed the contract as the result of any fraud or misrepresentation practiced upon him.

The defendant, it is true, does not appear to be as prosperous as he once was. This is accounted for by two cir-

cumstances: His income has been reduced to the extent of $2,500 a year, and, in addition to the alimony payments which he is required to make, he has increased his living expenses considerably. As soon as the statutory six months' period had expired, the defendant remarried. He built a new home in an exclusive residential district of Omaha, at a total cost, inclusive of the lot, of about $22,000, in contrast with the $6,000 home which was set aside to the plaintiff. In order to provide this new home, it was necessary for him to borrow $10,000 upon it from a building and loan company, and the annual payments on this building and loan company mortgage amount to $1,200.

Appellant also cites several cases from other jurisdictions where alimony had been reduced on the ground that the defendant had remarried and had a second family to support, or partly upon that ground. In this regard we believe that, under the circumstances in this case and in similar cases, the first wife and family should have the first consideration, and we are unable to say, from all the circumstances in this case, that the contract, voluntarily entered into by the parties, is in any respect unreasonable or unjust. We do feel, however, that, under the provision contained in this contract that the total payments provided for by the contract should not exceed 40 per cent. of the defendant's income, the insurance premiums, which amount to $245 a year, should be included within the 40 per cent. limitation.

With this modification the decree of the district court is affirmed.

AFFIRMED AS MODIFIED.