EVA PASKO, APPELLANT, V. JOHN TRELA, APPELLEE.

46 N. W. 2d 139

Filed February 9, 1951. No. 32894.

*Theodore L. Kowalski* and *Norman H. Denenberg,* for appellant.

*Wear & Boland,* and *John R. McCormack,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

On January 12, 1949, Eva Trela, as plaintiff, was granted an absolute divorce by the district court for Douglas County, from John Trela, defendant, on the ground of extreme cruelty. Plaintiff's former name of Eva Pasko was restored. On that date the parties also executed a property settlement in writing which was approved by the court, whereby plaintiff was paid $2,000 by John Trela in lieu of alimony or any interest she may have had in and to any of his property, and in full for any claim she might have had by reason of her loss of a widow's pension from the police department of New York City.

Thereafter, on April 15, 1950, within the time required by section 25-2008, R. R. S. 1943, Eva Pasko as plaintiff filed, in conformity with section 25-2002, R. R. S. 1943, a petition wherein John Trela was defendant, seeking thereby to vacate and modify that part of the divorce decree approving the property settlement, and set aside the property settlement upon the ground, as provided in section 25-2001, R. R. S. 1943, that such settlement and judgment of approval thereof were obtained by fraud practiced by defendant in that he was guilty of misrepresentation, concealment, conspiracy, and perjury with regard to his then money and property, which induced plaintiff to make the settlement. She also prayed that the court should enter a decree adjudging the true and just property rights between the parties, and for general equitable relief. Defendant answered, denying generally that he was guilty of any fraud, and alleged that plaintiff, who was represented by counsel at all times, had voluntarily accepted the settlement and approval with full knowledge of her rights and was estopped to assert that it was invalid.

Upon trial of the issues plaintiff adduced ample competent evidence to sustain the aforesaid allegations of fraud by defendant, who offered no evidence whatever to refute the same. Nevertheless, the trial court entered a decree finding and adjudging generally for defendant and against plaintiff, primarily upon the ground that prior to the execution of the property settlement and approval thereof, she had full knowledge of the facts and was fully advised of her rights by competent counsel. The judgment dismissed plaintiff's petition and taxed all costs generally to her, but allowed her an attorney's fee of $500, to be paid by defendant. Plaintiff's motion for new trial and defendant's motion to set aside that portion of the judgment allowing plaintiff an attorney's fee, were both overruled. Therefrom, plaintiff appealed, assigning substantially that the judgment finding generally for defendant and dismissing her petition was not sustained by the evidence but contrary thereto and contrary to law. We sustain the assignments.

Defendant cross-appealed, assigning substantially that the trial court was without statutory authority to allow plaintiff an attorney's fee. We conclude that the assignment has no merit.

It is generally the rule that in an appropriate and timely proceeding prosecuted under the aforesaid statutes, the district court has jurisdiction and authority to vacate or modify any part or all of its own judgment or orders in a divorce action after the term at which they were made for fraud practiced by the successful party in obtaining the same. Wisdom v. Wisdom, 24 Neb. 551, 39 N. W. 594, 8 Am. S. R. 215; Schafer v. Schafer, 71 Neb. 708, 99 N. W. 482; Williams v. Williams, 119 Neb. 8, 226 N. W. 798.

In Faulkner v. Klamp, 16 Neb. 174, 20 N. W. 220, this court held that: "Fraud may consist in words, acts, or the suppression of material facts with the intent to mislead and deceive." See, also, 37 C. J. S., Fraud, § 9, p. 225, § 15, p. 242; 23 Am. Jur., Fraud and Deceit, § 24,

p. 776, § 76, p. 850; Restatement, Contracts, § 471, p. 891.

As said in Restatement, Contracts, § 470, p. 890: "(1) 'Misrepresentation' in the Restatement of this Subject means any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts.

"(2) Where a misrepresentation would be likely to affect the conduct of a reasonable man with reference to a transaction with another person, the misrepresentation is material, except as this definition is qualified by the rules stated in § 474." The qualification has no application here.

As stated in section 479, p. 915: "Where fraud or misrepresentation is material with reference to a transaction subsequently entered into by a person deceived thereby, it is assumed in the absence of facts showing the contrary that it was induced by the fraud or misrepresentation." See, also, George v. Guarantee Mutual Life Co., 144 Neb. 285, 13 N. W. 2d 176.

Also, as stated in 37 C. J. S., Fraud, § 22, p. 259: "It is generally held that a fraudulent intent or the equivalent thereof is an essential element of fraud, and that such intent may be established by appropriate inference or presumption from the facts proved."

This court held in Foley v. Holtry, 43 Neb. 133, 61 N. W. 120: "The fact that the plaintiff made inquiries elsewhere which did not disclose the falsity of the representations is no defense. The plaintiff is entitled to relief if the representations were a material inducement to the contract, although he may have made efforts to discover the truth thereof, and did not rely wholly upon the veracity of defendant."

As stated in 23 Am. Jur., Fraud and Deceit, § 144, p. 945: "The mere fact that one makes an independent investigation or examination, or consults with others, does not necessarily show that he relies on his own judgment or on the information so gained, rather than on the representations of the other party, nor does it give rise to a

presumption of law to that effect. If, under the circumstances, he is unable to learn the truth from such examination or investigation or, without fault on his part, does not learn it and in fact relies on the representations, he is entitled to relief, all other ingredients of liability being present. It is well settled that where the representee makes only a partial investigation, relies in part upon the representations, and is deceived by such representations to his injury, he may maintain an action for such deceit or secure appropriate equitable relief. Furthermore, no right is affected by an investigation which confirms the representations." See, also, 23 Am. Jur., Fraud and Deceit, § 147, p. 951.

As stated in Restatement, Torts, § 547, p. 107: "The fact that the recipient of a fraudulent misrepresentation is relying upon his own investigation does not relieve the maker from liability if he by false statements or otherwise intentionally prevents the investigation from being effective."

In 37 C. J. S., Fraud, § 34, p. 278, it is said: "Generally a party dealing on equal terms with another is not justified in relying on representations where the means of knowledge are readily within his reach; but the mere presence of opportunities for investigation will not preclude the right of reliance where the circumstances are such as not to put one on inquiry, where there has been intentional fraud, where the hearer lacks equal facilities for ascertaining the truth, or where the nature of the transaction is such as to compel the hearer to rely on the speaker's statement."

As stated in 37 C. J. S., Fraud, § 34, p. 281: "That a party fails to avail himself of means of knowledge does not bar redress for fraud where the speaker uses artifice or misrepresentation to prevent him from investigating and learning the truth."

Finally, "According to the weight of authority, the truth or falsity of representations must be determined as

of the time they were acted on." 37 C. J. S., Fraud, § 17, p. 251.

In the light of the foregoing rules, we have examined the record, which discloses competent evidence to sustain the following: Plaintiff married defendant on July 1, 1948. They were then respectively 42 and 56 years of age. Prior thereto, plaintiff was a resident of New York City, where she was employed as an assistant buyer for Wanamaker's Department Store. She had been previously married to a New York City police officer, upon whose death she became eligible to receive and did thereafter receive a widow's pension of $50 a month for several years, which legally terminated upon her marriage to defendant. In the light of her expectancy, she then forfeited more than $16,000 by virtue of her marriage to defendant.

Plaintiff met defendant, who owned a combined grocery store and butcher shop in Omaha, sometime in October 1947, while she was visiting an aunt. They then went together for a short time until plaintiff returned to New York City, after which they corresponded. In February 1948, the aunt died, and plaintiff returned to Omaha, where she again met defendant upon several occasions. Upon her return to New York City they corresponded again, and in April defendant proposed marriage. Upon her agreement, she returned to Omaha where the marriage occurred.

Prior thereto, plaintiff knew but little about defendant's property, but defendant knew that she was leaving her position in New York, and that she was receiving a widow's pension with which she was educating her son, then 19 years of age. He also knew that the pension would terminate upon her marriage to him, but assured her that he could and would make adequate provision for plaintiff and her son. On November 27, 1948, plaintiff brought a suit against defendant for separate maintenance, and he filed a cross-petition, seeking an absolute divorce. Later plaintiff amended her

petition to ask for an absolute divorce, whereupon defendant dismissed his cross-petition, and on January 12, 1949, plaintiff was granted the decree, a part of which is here involved.

By the time her suit was instituted, plaintiff knew that defendant had owned four pieces of real property, including the grocery store where they lived in a combination dwelling. She learned also that he did have four separate bank accounts and had owned some war bonds and postal savings. She so informed her attorney; who examined the records of the register of deeds where he found that the four pieces of real property had all been deeded to defendant's daughters, or to them and their husbands, by deeds dated sometime prior to the marriage, although not recorded until just prior to or after plaintiff's suit was filed.

On December 30, 1948, in the presence of plaintiff, her counsel took defendant's deposition. Likewise, on January 7, 1949, the depositions of one John Gaspar, defendant's real estate, insurance, and mortgage loan agent, and the two daughters of defendant, were taken. The defendant's deposition was offered and received in evidence in this proceeding, but the other three, although offered in evidence by plaintiff, were excluded by the court. The question of their exclusion was not raised here, but there is affirmative competent evidence in the record establishing that the testimony of John Gaspar and defendant's two daughters appearing in their depositions generally corroborated in every material respect the deposition testimony given by defendant.

In his deposition defendant testified substantially as follows: That he owned the grocery store, having a stock valued at about $500, and that there were $600 or $700 of bills receivable therefrom, but that he did not then own the property in which the store was located, having sold it to his daughter and son-in-law sometime before the marriage, at which time a deed was delivered to them therefor, to be recorded at their own pleasure.

The consideration for such property was a small amount of cash plus what he owed them for helping in the store over the years, and their share of their mother's estate. However, defendant was to operate his business and live there by paying rent, but they were to help him with money or otherwise if he ever needed anything. At the same time, under similar circumstances, he deeded two residence properties to another daughter and her husband as a gift, and then delivered the deeds, because they had assisted in the store for many years and had asked for their share of the estate. The agreement was, however, that they were to help him if he ever needed anything. Likewise, under similar circumstances, prior to the marriage, he deeded to a daughter and son-in-law 189 acres of farm land, by operation of which he had lost money for two years, most of which he still then owed. He testified that he gave it to them as their share of the estate and as trouble and expense which he was unable longer to want or assume.

He testified that prior to the marriage he took most of his money out of the banks and used substantially all of it to pay bills, personal, business, and otherwise, and to buy a new car. However, he testified that a part of such money did not belong to him but to his daughters, so he transferred it to them in equal shares, since it was their share of their mother's estate. He took out $2,500 from a postal savings account, and still had the money at home. He did have $18,000 in government bonds payable to himself and a daughter. However, they were cashed and he still had part of it which he was using to live on, but his daughter got most of it. He testified that he had a few mortgages with John Gaspar; very little; a very small amount, a record of which was kept by John Gaspar over in his office. He testified that his net worth was then about $8,000 or $10,000, not even that much, while before the marriage and before he made the aforesaid transfers his net worth was only some $20,000 to $30,000. Because his business had lost

heavily in recent years he then had but little left. John Gaspar, his agent, handled most of the transactions for him.

In the light of the foregoing, plaintiff's counsel advised her that she would herself be required to decide what to do and it was a reliance upon those acts and representations of defendant, his daughters and his agent, which then induced plaintiff on January 12, 1949, to agree upon the property settlement here involved, and permit the court to approve it. As hereinafter observed, such material acts and representations were intentionally and palpably false. Thus the true facts then exising were intentionally misrepresented, concealed, and suppressed by defendant and those who conspired with him, who knew the truth but nevertheless assisted defendant in perpetrating the fraud upon plaintiff.

Plaintiff discovered the truth only after the decree had been entered approving the property settlement, when subsequent acts and conduct of defendant disclosed it, and defendant's agent, John Gaspar, commendably admitted the falsity of the testimony given in his deposition.

In that connection, the record now before us discloses that defendant's bank and savings and loan balances during the marriage totalled $23,877.26. However, when his deposition was taken, his bank balances totalled but $35, and there were no savings and loan balances in his name. It was found, however, that within a short time after the divorce decree was entered, such balances were restored to a total of $15,883.18. The price of a new car, a loan made by defendant to John Gaspar, and payment of current bills would account for the difference. During the marriage defendant owned real estate mortgages totalling $29,241.16, allegedly sold to John Gaspar, which assignments thereof predating the marriage, all being false and part of the plan to defraud plaintiff, were reassigned to defendant after the divorce decree had been entered.

At the trial of this proceeding, John Gaspar testified that about December 15, 1948, he took assignments of all the mortgages owned by defendant, and, as directed, then dated them long before the marriage. He repudiated his testimony given by deposition, and admitted its falsity. He testified in substance that before Christmas, 1948, defendant came to his office, told him that his wife had sued him, and because thereof he was in trouble and wanted John Gaspar to help him out. Defendant then had upon his person his money drawn from the banks, some $15,000 or $16,000, plus $5,000 which John Gaspar then borrowed from him. Although so requested by defendant, John Gaspar then refused to take possession of the rest of the money. Defendant also then urged John Gaspar to make the predated deeds aforesaid to his real property, then worth much more than stated by defendant in his deposition, and to personally take assignments of all his mortgages and date them back to a time before the marriage. Thereupon, John Gaspar admitted that he then complied with defendant's requests and prepared the instruments aforesaid, which were all falsely predated, signed, witnessed, and acknowledged. He admitted that some time after decree of divorce was rendered, all of the mortgages were, according to plan, reassigned back to defendant. John Gaspar also admitted that in the meantime he had falsified his own book records with regard to defendant's mortgages to conform to such a plan.

The record discloses beyond any doubt that defendant's representations with regard to his net worth at the time of the marriage, or the filing of plaintiff's action and entry of the decree, were entirely false in that at all times his net worth was in fact more than $100,000.

We conclude that the portion of the divorce decree approving the property settlement here involved should be and hereby is vacated and set aside for the reasons alleged by plaintiff in her petition.

Further, we apply the general rule that: "In the

division of property and allowance of alimony in a divorce action, the court, in the exercise of judicial discretion, should consider the estate of the parties, if any, at the time of the marriage and their contributions since; the duration of the marriage; the wife's loss of interest in the husband's property by virtue of the divorce; the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the conduct of the parties leading up to the divorce; to which party the divorce was granted; the age, condition of health, and earning ability of the parties; and all other relevant facts and circumstances; and make such an award as appears to be fair and equitable." Peterson v. Peterson, 152 Neb. 571, 41 N. W. 2d 847.

In doing so, we conclude that the plaintiff was entitled to recover as alimony the sum of $25,000, which includes the $2,000 already received by her, and that she thus should be and hereby is awarded a judgment against defendant for a total of $25,000 as alimony, together with all costs, both in the district court and in this court, including $2,500 taxed as costs for services rendered by plaintiff's attorney in this court. As will hereinafter be observed, such adjudged sums and costs will be in addition to the $500 attorney's fee already allowed plaintiff in the district court, which should be and is hereby ordered taxed to defendant as a part of such costs in the district court, all of which sums, except the $2,000 already received by plaintiff, shall be a lien upon and payable out of all the property and moneys owned by defendant.

The cross-appeal contended that the allowance to plaintiff of an attorney's fee of $500 for services rendered by her attorney in the district court was without statutory authority. We conclude otherwise.

Section 42-308, R. S. 1943, provides: "In every suit brought either for a divorce or for a separation, the court may, in its discretion, require the husband to pay any sum necessary to enable the wife to carry on or

defend the suit during its pendency; and it may decree costs against either party, and award execution for the same; or it may direct such costs to be paid out of any property sequestered, or in the power of the court, or in the hands of a receiver."

In O'Brien v. O'Brien, 19 Neb. 584, 27 N. W. 640, this court held: "In such case, where the divorced wife seeks a modification of the decree for alimony, alleging that the decree was obtained by the fraud of the husband and his agents, the district court has authority to require the husband to pay into court a reasonable sum of money, to enable her to prosecute her action."

The basis of such conclusion was, as a matter of course, that an action to set aside a property settlement and modify a decree for alimony procured by fraud is a proceeding ancillary to the original divorce proceeding and deemed a part thereof, thereby giving the court authority to grant the same relief, including an allowance for attorneys' fees as it had in the original suit. See, also, Knaack v. Knaack, 245 Ill. App. 1; Moran v. Moran, 281 Ky. 739, 137 S. W. 2d 418; Asher v. Asher, 249 Ky. 215, 60 S. W. 2d 592; Logsdon v. Logsdon, 204 Ky. 104, 263 S. W. 728; Lippincott v. Lippincott, 152 Neb. 374, 41 N. W. 2d 232.

This court has also concluded that suit money or attorneys' fees may be allowed or awarded a wife in the exercise of judicial discretion at any stage in divorce litigation, and may be included in the final decree. Willits v. Willits, 76 Neb. 228, 107 N. W. 379, 5 L. R. A. N. S. 767; Brasch v. Brasch, 50 Neb. 73, 69 N. W. 392. In the latter case, citing O'Brien v. O'Brien, *supra,* and other cases, it was said: "The argument is made that the court having dismissed the wife's action, was without authority to render a judgment against the husband for the 'costs and expenses' incurred by the wife in the prosecution of the suit." After quoting from what is now section 42-308, R. S. 1943, the opinion then went on to say: "The theory of appellant's counsel seems to be

that this judgment of the district court awarding the wife 'costs and expenses' incurred in the prosecution of the suit could have been made only by the court before the final decree was pronounced; or, in other words, that the decree appealed from was not rendered during the 'pendency' of the action within the meaning of the statute quoted above. We do not think this contention is tenable."

We conclude that the trial court did not abuse its judicial discretion in allowing plaintiff a $500 attorney's fee, taxable to defendant as costs. Therefore, we affirm only that part of the judgment, but reverse the rest of it, and enter judgment for plaintiff in the manner and for the amounts heretofore set forth.

AFFIRMED IN PART, AND IN PART REVERSED, WITH JUDGMENT FOR PLAINTIFF ENTERED IN THIS COURT.